# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **GARY DON H.,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 3:19-CV-2441-D-BK** |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** | § | |
| | § | |
| | § | |
| **DEFENDANT.** | § | |

## FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 42 U.S.C. §405(g), Plaintiff seeks judicial review of a final decision by the Commissioner denying his application for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Doc. 1 at 1. In accordance with 28 U.S.C. § 636 and *Special Order 3*, before the Court for findings and a recommended disposition are the parties' cross-motions for summary judgment. Doc. 13; Doc. 14. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

## I. BACKGROUND

### A. Facts

Plaintiff filed for benefits in February 2015, claiming that he became disabled in December 2014. Doc. 10-1 at 217-18. Plaintiff was 51 years old when he filed his DIB application, with a ninth-grade education, over 150 college credit hours earned while serving in the military, and past relevant work experience as a real estate agent and broker. Doc. 10-1 at

23; Doc. 10-1 at 65, 80. In terms of his relevant medical history, Plaintiff was treated on an ongoing basis for cirrhosis, mild lumbar degeneration, lumbar radiculopathy, pancreatitis, diabetes, mild splenomegaly, coronary artery disease, hypertension, peripheral vascular disease, an umbilical hernia, a heart artery occlusion, and ventricular hypertension. Doc. 10-1 at 604, 609, 612-13, 616, 629; Doc. 10-1 at 703, 705, 721, 764; Doc. 10-1 at 1280. For purposes of his DIB application, Plaintiff's date last insured ("DLI") was September 30, 2018. Doc. 10-1 at 14.

**B. Administrative Proceedings**

In July 2016, the ALJ conducted a hearing during which medical expert, Dr. Howard Shapiro, M.D testified. The ALJ questioned Dr. Shapiro about Plaintiff's ability to perform work-related activities from the onset of his disability in December 2014 until June 2015 when the ALJ believed Plaintiff's DIB coverage lapsed. Doc. 10-1 at 61. Dr. Shapiro opined that Plaintiff could stand and sit for two hours at a time and walk four hours in a day, lift/carry 50 pounds occasionally and 25 pounds frequently, and had some postural limitations. Doc. 10-1 at 62-63. Additionally, Dr. Shapiro noted that given Plaintiff's diabetes and history of a heart attack, "it would be reasonable to reassess [him] after three years" because "[t]he problems that he has may be more severe in 2019." Doc. 10-1 at 63.

In October 2016, the ALJ issued a decision denying Plaintiff's DIB application. Doc. 10-1 at 99-110. The Appeals Council vacated and remanded, however, because the ALJ had not properly calculated Plaintiff's DLI. Doc. 10-1 at 115-17. The ALJ then conducted another hearing, clarifying that the DLI was September 2018 — two months past the date of the hearing[1] — and admitting additional medical records into evidence, dating from July 2015 through June

---

[1] In his written decision, the ALJ "gave [Plaintiff] the benefit of the doubt" by considering the evidence through the date of his November 16, 2018 decision. Doc. 10-1 at 14.

2018. Doc. 10-1 at 33. Plaintiff testified, under the ALJ's and his attorney's questioning, about updates to his medical history that had taken place since the first hearing. Doc. 10-1 at 36-46. After taking testimony from a vocational expert, the ALJ adjourned the hearing.

In November 2018, the ALJ issued his second decision. He first found that Plaintiff had the severe impairments of cirrhosis, obesity, lumbar degenerative changes, type 2 diabetes, coronary artery disease, hypertension, peripheral vascular disease status-post stent placement, and an umbilical hernia. Doc. 10-1 at 17. The ALJ then found that Plaintiff did not have an impairment or combination thereof that met or equaled the severity of one of the listed impairments in the regulations, and Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. Doc. 10-1 at 19. Accordingly, the ALJ ruled that Plaintiff was not disabled. Doc. 10-1 at 24. The Appeals Council affirmed. Doc. 10-1 at 5-9.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be

performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by

"citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

## III. DISCUSSION

Plaintiff argues that the ALJ had no evidentiary basis for determining Plaintiff's post-June 30, 2015 RFC—the date the ALJ believed was Plaintiff's DLI when he questioned Dr. Shapiro at the July 2016 administrative hearing. Doc. 13 at 5. Plaintiff thus asserts that the ALJ's RFC finding in his second decision is not based on any medical opinion, but solely the ALJ's interpretation of the post-June 2015 medical records. Doc. 13 at 6-7. Plaintiff contends this error was prejudicial because Dr. Shapiro himself had indicated that Plaintiff's medical problems could worsen and should be reassessed after three years.[2] Doc. 13 at 6.

In response, Defendant allows that because Dr. Shapiro did not "consider the medical evidence for the relevant period, his opinion was appropriately not substantial evidence of whether Plaintiff was disabled." Doc. 14 at 7. Nevertheless, Defendant asserts that the ALJ stated he had carefully considered all of the evidence of record, including Plaintiff's relatively mild medical issues, daily activities, and ability to perform some work after his onset disability date, and it is ultimately the ALJ's responsibility to determine a claimant's RFC. Doc. 14 at 8-10.

Plaintiff replies that his medical records demonstrate that his condition indeed worsened after his original presumed DLI, and the ALJ was not qualified to interpret those records in

---

[2] Although Plaintiff also argues that the ALJ erred by substituting his own medical judgment for Dr. Shapiro's by assessing a less strenuous RFC than the doctor had, Doc. 15 at 7-9, that issue need not be addressed given the recommended disposition as to Plaintiff's first argument.

assessing Plaintiff's RFC. Doc. 15 at 4-6; *see, e.g.*, Doc. 10-1 at 1098 (May 2016 notes stating Plaintiff is "Level 2, moderate-risk" with sensory loss in both feet with possible diminished circulation and foot deformity or infection); Doc. 10-1 at 1034 (May 2017 notes stating Plaintiff is "Level 3, high risk for amputation" with weak pedal pulses in both feet); Doc. 10-1 at 1038-39 (May 2017 notes stating Plaintiff has 7/10 low back pain, ambulates with an assistive device due to impaired mobility, and is a high fall risk); Doc. 10-1 at 1008-09 (September 2017 notes finding decreased range of motion of the lumbar spine in both flexion and extension, axial loading increased tenderness, and diminished motor power of the left lower extremity); Doc. 10-1 at 1278-79 (May 2018 notes indicating Plaintiff had a slow gait, walked with a cane, had decreased bilateral foot sensation; impression was "Level 2, moderate-risk" due to sensory loss with possible diminished circulation and foot deformity or infection).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), an ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence demonstrating that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* The court thus remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id*. at 557-58. Nevertheless, the *Ripley* panel explained that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. The panel held that reversal in such cases is only appropriate if the claimant shows that he was prejudiced. *Id.* To demonstrate prejudice, a claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

Here, although the ALJ noted in his decision that he considered medical opinion evidence, he did not mention Dr. Shapiro's prior testimony. Doc. 10-1 at 19. Moreover, the ALJ gave no weight to the state agency medical consultants' opinions that there was insufficient evidence to determine Plaintiff's RFC. Doc. 10-1 at 22. The ALJ also gave limited weight to the Department of Veterans Affairs' finding that Plaintiff's service-connected disability rating is 80 percent. Doc. 10-1 at 23; *see* Doc. 10-1 at 774. The ALJ did not cite to any other medical opinion evidence in the record nor does there appear to be any. Instead, the ALJ interpreted Plaintiff's laboratory results, blood pressure readings, physical examinations for lower back pain, and alleged lack of cirrhosis symptoms in determining Plaintiff's RFC. Doc. 10-1 at 21-22.

Similar to *Ripley*, Plaintiff's record contains a substantial amount of evidence demonstrating that he had a variety of medical problems, but did not contain any medical opinion whatsoever establishing that he could perform a limited range of light work through the date of the ALJ's decision. *Ripley*, 67 F.3d at 557. Moreover, Plaintiff was prejudiced by the error because the medical evidence that post-dated his original presumed DLI reflects that Plaintiff's condition may have worsened over time — as Dr. Shapiro suggested could happen — which "might have altered the result." *Brock*, 84 F.3d at 728-29. Plaintiff is thus entitled to summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 13, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 14, should be **DENIED**, the

Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on December 2, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).